UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-22681-Civ-SCOLA

LYNN BRESLOW, individually and on
behalf of R.B., a minor,

    Plaintiffs,

vs.

WELLS FARGO BANK, N.A., a national
bank, (d/b/a "Wachovia Bank, a division of
Wells Fargo Bank, N.A."),

    Defendant.
_____/

## ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS MATTER is before the Court on the Plaintiff's Motion for Partial Summary Judgment as to the Defendant's Liability (ECF No. 44). The Court has reviewed the arguments, the record, and the relevant legal authorities, and for reasons set forth more fully below, it is **ORDERED and ADJUDGED** that the Motion (ECF No. 44) is **GRANTED**.

### I. FACTUAL BACKGROUND

Plaintiff Lynn Breslow ("Breslow") brought this action both individually and on behalf of R.B., a minor, against Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). The Amended Complaint (ECF No. 5) was filed on August 11, 2011, and raises a single count claiming violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA").

The factual record in this action is short and few facts are in dispute. Breslow came to own a cellular telephone with the assigned number 786-877-3516 (the "Cell Number") in or around August 2008. Pl.s' Answer to Def.'s 2d Set of Interrogs. 4 ¶ 1, ECF No. 53-2; Breslow Aff. ¶ 2, ECF No. 44-2. Record statements by the Plaintiffs indicate that only R.B., a minor, and not Breslow, had exclusive access to or used the Cell Number. Pl.s' Answer to Def.'s 1st Set of Interrogs. 6 ¶ 3, ECF No. 53-1. It is undisputed that since August, 2008, Wells Fargo placed multiple calls to the Cell Number. *See*

Breslow Aff. 3 (providing billing records); Call Summary 11–12, ECF No. 44-3.[1] These calls were made in connection with a debt owed to Wells Fargo not by the Plaintiffs, but by a former Wells Fargo Customer ("Former Customer"). Haeberlin Aff. ¶ 13, ECF No. 54-1; *cf.* Am. Compl. 5 ¶ 13, ECF No. 5 (alleging that where calls were transferred to a human operator, the operator would ask to speak to an unknown individual). Wells Fargo provided evidence—uncontroverted by the Plaintiffs—that Former Customer was the intended recipient of the calls Wells Fargo placed to the Cell Number rather than the Plaintiffs. Haeberlin Aff. ¶ 14. The evidence on the record indicates that Former Customer provided Wells Fargo with the Cell Number in connection with an account Former Customer maintained at Wells Fargo, that Former Customer owed a debt in connection with that account at the times the calls to the Cell Number were placed, that the Cell Number was the only number Former Customer provided to Wells Fargo, and that Former Customer had neither revoked consent for Wells Fargo to call the Cell Number nor informed Wells Fargo that the number had changed. Haeberlin Aff. ¶¶ 10–17.

It is undisputed that the calls made to the Cell Number were made using an automated telephone dialing system or an artificial or prerecorded voice. Motion 2 ¶ 5, ECF No. 44-1; Def.'s Resp. 2 ¶ 5, ECF No. 54. A Wells Fargo officer testified that a call placed on September 25, 2008 at 4:20 p.m. reached an answering machine, and that a call placed on the same day at 7:08 p.m. reached a live individual, who advised Wells Fargo that it had reached a wrong number. Haeberlin Aff. ¶¶ 20–21. The officer further testified that subsequent to the 7:08 p.m. call and advisement that the number was a wrong number, Wells Fargo entered the account number held by Former Customer and the Cell Number into a program that excluded the Cell Number from further automated calls. Haeberlin Aff. ¶ 22. The parties have proffered no evidence demonstrating that any calls were made after September 25, 2008 at 7:08 p.m. *See* Breslow Aff. 3; *see also supra* note 1.

---

[1] The parties dispute the volume and frequency of the calls Wells Fargo made to the Cell Number after August 2008. Breslow argues that Wells Fargo could have placed as many as 1400 calls to the Cell Number during the relevant time period, while Wells Fargo states that it only placed two calls. The record evidence provided by both parties only reveals two calls, both made on September 25, 2008. *See* Breslow Aff. 3 (providing billing records showing two calls from a number associated with Wells Fargo); Call Summary 11–12 (showing two calls from Wells Fargo to Cell Number). The Plaintiffs additionally argue that the Call Summary is not an admissible summary under Federal Rule of Evidence 1006, as Wells Fargo has not made the original records available for examination, as required by Rule 1006. Fed. R. Evid. 1006. Despite the Plaintiff's concerns, the Court need not rule on the admissibility of the Call Summary. Even without considering that document, the records attached to Breslow's own Affidavit similarly indicate that two calls were made from Wells Fargo to the Cell Number, matching the calls reflected in the Call Summary to the minute. Breslow Aff. 3. The parties have provided no further evidence demonstrating the number of calls made after August 2008.

## II. LEGAL STANDARDS

*a. Summary Judgment*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party—here, Wells Fargo. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

*b. TCPA*

The TCPA provides, in relevant part:

(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

> (A) To make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

. . .

> > (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii). Under § 227(b)(3), a person or entity may bring an action to recovery actual monetary loss for a violation of the above prohibition, to receive $500 in statutory damages for each violation (which may be tripled in the event of a willful or knowing violation). *Id.* at §227(b)(3). "The TCPA is essentially a strict liability statute" that "does not require any intent for liability except when awarding treble damages." *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (quoting *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008)).

The TCPA gives the Federal Communications Commission ("FCC") the authority to prescribe regulations and implement the TCPA's provisions. 47 U.S.C. § 227(b)(2). On January 4, 2008, the FCC adopted Declaratory Ruling 07-232, which stated:

> [A]utodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party [and] such calls are permissible. We conclude that the provision of a phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.

*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 23 FCC Rcd. 559, 564 (F.C.C. 2008) (hereinafter FCC Ruling 07-232). The FCC qualified this exemption for debt collection calls as calls made with "prior express consent" by emphasizing that consent is deemed to be granted only if the cellular number called: (1) was provided by the consumer to the creditor; and (2) was provided during the transaction that resulted in the debt owed." *Id.* at 564–65. Moreover, as further protection for consumers, "the *creditor* should be responsible for demonstrating that the consumer provided prior express consent." *Id.* at 565. Thus, the prior express consent exemption acts as an affirmative defense, and "the burden will be on the creditor to show it obtained the necessary prior express consent." *Id.*

In summary, to demonstrate a violation of the TCPA, the Plaintiffs need only show that Wells Fargo called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice. *See Cavero v. Franklin Collection Serv., Inc.*, No. 11-22630-CIV, 2012 WL 279448, at *2 (S.D. Fla. Jan. 31, 2012) (Altonaga, J.). Wells Fargo may demonstrate, by way of affirmative defense, that it placed such calls with the prior express consent of the "called party." 47 U.S.C. § 227(b)(1)(A)(iii). Significantly, neither the TCPA nor the FCC defines the term "called party."

### III. ANALYSIS AND CONTROLLING AUTHORITY

It is undisputed that Wells Fargo placed multiple calls to the Cell Number, a cellular number, and that those calls were made using an automated telephone dialing system or a prerecorded voice. Therefore, absent a record showing of a valid defense, the undisputed facts would demonstrate that Wells Fargo violated the TCPA.

The record shows that while Wells Fargo's calls after August 2008 were actually received by the Plaintiffs, they were made in connection with Former Customer's debt to Wells Fargo, and Former Customer was the intended recipient. The evidence also indicates that Former Customer provided the Cell Number to Wells Fargo during the transaction that resulted in Former Customer's debt. Had Former Customer kept the Cell Number and Wells Fargo's automated calls actually reached Former Customer, the provision of the Cell Number to Wells Fargo would certainly constitute "prior express consent" as defined by the FCC.

Wells Fargo contends that this consent controls the present action, and that there can be no TCPA liability because of the prior express consent of Former Customer—the *intended* recipient—by nature of the transaction giving rise to Former Customer's debt. The Plaintiffs, on the other hand, maintain that the prior express consent must come from the *actual* recipient of the calls, and that Wells Fargo has provided no evidence demonstrating that the Plaintiffs gave their express consent. Thus, the single issue before this Court is: Who is the "called party" under the TCPA's cellular calls prohibition—the intended recipient, or the actual recipient?

In support of its position, Wells Fargo relies upon the Eleventh Circuit's decision in *Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230 (11th Cir. 2011). In that case, the defendant collection agency placed numerous automatic calls to the plaintiff's residential phone line regarding the collection of a debt not owed to the defendant by a third party debtor. The plaintiff sued under a related provision of the TCPA which prohibits automatic calls to any residential line without the prior express consent of the "called party" unless the call is for emergency purposes or otherwise exempted by an FCC rule or order. 47 U.S.C. § 227(b)(1)(B).

The Court analyzed FCC regulatory exemptions from this provision, in particular an exemption for calls "made to any person with whom the caller has an established business relationship at the time the call is made." *Meadows*, 414 F. App'x at 235 (quoting 47 C.F.R. 64.1200(a)(2)(iv)). The Court applied the exemption to the FCC's prior ruling that debt collection calls are "calls from a party with whom the consumer has an established business relationship." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8773 ¶ 39 (F.C.C. 1992)

(hereinafter FCC Ruling 92-443). Based on the ruling and regulation, the Court found that the defendant had an established business relationship with the debtor, the intended recipient of its calls. The Court then applied its finding:

> Because [defendant] had an existing business relationship with the intended recipient of its prerecorded calls . . . we conclude that those calls are exempt from the TCPA's prohibitions of prerecorded calls to residences.

*Meadows*, 414 F. App'x at 235. Essentially, the Eleventh Circuit held that the "called party" for the purposes of § 227(b)(1)(B)'s residential calls prohibition was the intended recipient rather than the actual recipient. Wells Fargo asserts that this same result applies here.

Wells Fargo's position is not without merit. *Meadows* is the only Circuit Court decision dealing with the issue of who constitutes the "called party" under a provision of the TCPA (albeit a different provision than the one presently at issue). Moreover, the Court's analysis parallels the FCC's general position that "calls regarding debt collection or to recover payments are not subject to the TCPA's separate restrictions on 'telephone solicitations.'" FCC Ruling 07-232, at 565. *Meadows*, however, is distinguishable. That Court held that calls to an intended recipient with whom the caller had an *existing business relationship* were exempt from the TCPA's prohibitions of prerecorded calls to *residences*. *See Meadows*, 414 F. App'x at 235. Significantly, the TCPA's residential calls prohibition is contained within a separate subsection from the cellular calls prohibition. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting automatic calls to cellular telephone numbers, among others), *with Id.* at § 227(b)(1)(B) (prohibiting automatic calls to any residential telephone line). The different provisions also provide different exemptions: While both exempt calls made with the "prior express consent of the called party," the residential calls prohibition also authorizes the FCC to promulgate rules creating additional exemptions. *Id.* at 227(b)(1)(B). Pursuant to that authority, the FCC further exempted from liability "any telephone call to any *residential line*" unless the call "is made to any person with whom the caller has an *established business relationship* at the time the call is made." 47 C.F.R. 64.1200(a)(2), (a)(2)(iv) (emphasis added). It was this exemption—unique to the residential calls prohibition—that the Court applied in *Meadows*. More importantly, the Court applied that particular exemption despite the fact that *both provisions* contain a "prior express consent" exemption. At a minimum, the facts of *Meadows* are distinguishable, but this Court finds the rationale significant.

Practical realities support a distinction between residential and cellular lines. Residential lines are often shared by multiple users. An individual giving her home phone number to a creditor may also be giving the creditor her husband's, mother's or roommate's home number. Any of these

individuals could answer the phone should the creditor attempt to call the line in an effort to collect the debt. This consideration was important in *Meadows*. *See Meadows,* 414 F. App'x at 235 ("Otherwise, a debt collector . . . would violate the TCPA if it called the debtor's number and another member of the debtor's family answered."). Cellular lines, on the other hand, are personal to an individual—one person rarely answers another's cellular phone. Thus, the intended recipient and actual recipient of a call to a cellular line is most often the same person, making a broader exemption less necessary than for residential lines.

The language of the TCPA also supports the Plaintiffs' interpretation, as recognized by several courts. *See, e.g.*, *D.G. v. Diversified Adjustment Serv., Inc.*, No. 11 C 2062, 2011 WL 5506078, at *3 (N.D. Ill. Oct. 18, 2011); *Soppet v. Enhanced Recovery Co.*, No. 10 C 5469, 2011 WL 3704681, at *1–*2 (N.D. Ill. Aug. 21, 2011). In particular, § 227(d) of the TCPA, which describes technical standards for fax machines and automated dialing systems, also uses the term "called party." That section provides that a system must "automatically release the *called party's* line within 5 seconds of the time notification is transmitted to the system that the *called party* has hung up, to allow *the called party's line* to be used to make or receive other calls." 47 U.S.C. § 227(d) (emphasis added). This use of "called party" clearly refers to the actual recipient of the call rather than the intended recipient. "[T]here is a presumption that a given term is used to mean the same thing throughout a statute." *Mohamad v. Palestinian Auth.*, No. 11-88, 2012 WL 1314011, at *5 (U.S. Apr. 18, 2012) (citing *Brown v. Gardner*, 513 U.S. 115, 118 (1994)). The use of "called party" to unambiguously refer to the actual recipient in another section of the TCPA is compelling evidence that the term carries the same meaning in other provisions. Various federal courts have interpreted the term in this way. *See, e.g., Tang v. Medical Recovery Specialists, LLC*, No. 11 C 2109, 2011 WL 6019221, at *3 (N.D. Ill. Jul. 7, 2011) (finding "called party" was actual recipient); *D.G. ex rel. Tang v. William W. Siegel & Assocs., Attorneys at Law, LLC*, 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011) ("Because [defendant] intended to call Plaintiff's cellular phone number, Plaintiff received the calls, and Plaintiff is the regular user and carrier of the phone, Plaintiff qualifies as a 'called party' under the TCPA.").

Finally, there are important policy considerations underlying the Plaintiffs' position. The TCPA was intended to protect individuals from unsolicited automated telemarketing calls, and to deter callers from utilizing such calls in an unregulated fashion. *See, e.g., Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) ("The TCPA was enacted to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers.'" (citing S. Rep. No. 102-178, at 1 (1991)); *see also Adamcik v. Credit Control*

*Servs., Inc.*, No. A-10-CA-399-SS, 2011 WL 6793976, at *8 n. 15 (W.D. Tex. Dec. 19, 2011) (observing that Congress intended statutory fines in TCPA as measure to deter violations). As noted above, the statute is generally considered a strict liability statute. To extend an exemption for certain calls based on the defendant's intentions would seem to weaken this standard, injecting an element of intent into a law that, on its face, penalizes actions alone. Consideration of a defendant's intent at the liability stage also presents difficulties applying that intent when determining damages under § 227(b)(3)(C). That section allows for damages of up to three times the statutory reward "if the court finds that the defendant *willfully* or *knowingly* violated this subsection." 47 U.S.C. § 227(b)(3)(C) (emphasis added). A finding that a defendant placed automated calls with the specific intent to reach the dialed number would seem to qualify as at least a "knowing" violation, resulting in nearly every such call triggering treble damages. This would present defendants with the uncomfortable choice of raising a defense as to its intent only at the risk of heightened damages.

Additionally, while the Court recognizes Wells Fargo's concern that allowing "incidental" recipients to sue might result in potentially endless liability based on who answers the phone, to hold otherwise might allow a defendant who obtained the prior express consent of a previous owner of a cellular phone number to forever escape liability for placing automated calls to subsequent owners of the same number. Such a situation is equally disconcerting; however, these conversely detrimental scenarios demonstrate the core policy issue at stake in this case: The Court must assign one of these parties the cost of correcting the error that gave rise to this dispute. If a "called party" with respect to § 227(b)(1)(A)(iii) is the intended recipient, the moral of the story is that consumers who acquire new cellular phone numbers and wish to avoid unwanted calls bear the responsibility of determining whether or not a prior owner of the number ever gave consent to any lending institutions to be called. If the "called party" is the actual recipient, the moral is that companies who make automated calls bear the responsibility of regularly checking the accuracy of their account records or placing intermittent live verification calls. Viewed from this perspective, it seems to the Court that entities like Wells Fargo—which already keep records of accounts and phone numbers—are in a much better position to bear this responsibility than are individuals like Breslow. The Plaintiffs' interpretation is more reasonable to this Court and others, absent an indication from Congress or the FCC to the contrary.

Accordingly, the Court finds that the "called party" for the purposes of § 227(b)(1)(A)(iii) was not Former Customer, but the Plaintiffs. The record does not indicate—and Wells Fargo does not argue—that the Plaintiffs ever gave their express consent to be called, or that they gave the number to Wells Fargo in connection with any transaction. Absent a valid defense, the Court finds that there is

no genuine issue of disputed fact that Wells Fargo violated the TCPA. Summary judgment as to liability in favor of the Plaintiffs is appropriate.

## IV. **CONCLUSION**

For the foregoing reasons, the Plaintiffs' Motion for Partial Summary Judgment as to the Defendant's Liability (ECF No. 44) is **GRANTED**. This case shall continue with proceedings in order to determine damages.

**DONE and ORDERED** in chambers, at Miami, Florida, on April 26, 2012.

_____
ROBERT N. SCOLA, JR.
**UNITED STATES DISTRICT JUDGE**

*Copies to:*
Designated U.S. Magistrate Judge
Counsel of record